Good morning. May it please the Court, my name is Ray Kuntz. I represent Alex Nixon. My co-counsel, Mr. Jock West, represents Sheriff Tom Rieger. I'll present argument to the Court this morning on behalf of both Nixon and Rieger. I'd like to reserve three minutes for any rebuttal. What I'd like to do this morning is address the questions that this Court has asked in its instructions on supplemental briefing. I'd first like to address question two, the issue of whether Mr. Burgan's rights were clearly established as a matter of law at the time he was charged with trespassing, then turn to question one, whether in fact any constitutional right was violated here, and then address the Court's questions about where these issues are raised below or previously briefed. The question of whether Mr. Burgan's rights were clearly established is a question of law for this Court to decide. And Mr. Burgan, in his supplemental brief, cites the case of U.S. v. Miller as particularly illustrative of an analogous situation where the Tenth Circuit says a criminal trespassing charge should not be used to resolve an underlying easement dispute between adjoining property owners. There are two things that distinguish Miller from the facts of this case. The first are the statements and threats made by Mr. Burgan in the course of the easement dispute. And the second is the United States' position as an interested party in Miller. Now, what Mr. Burgan says in his communications with Alex Nixon, the county attorney, is in an He is tired of this bull. Where is it going to end? When someone gets hurt or killed? This is an – are we to live in fear that this escalating situation will become more serious? And he says, because it will. Nixon and Rieger's primary interest in this case is, in fact, keeping the peace. It's making sure that this easement dispute does not boil up into something where someone does at some point get hurt and killed. If you look at the pattern of both statements and actions taken by Mr. Burgan, he says to Mr. Nixon in April of 2013, my bolt cutters are ready. He then, in fact, takes out the bolt cutters and cuts the locks in June. He then proceeds to continually confront Mr. Burgan – Mr. What happens is it's not a rapidly escalating situation, but it is nonetheless one where the confrontations continue and appear to be likely to continue. At that point, the sheriff and the county attorney have to take some kind of action. You don't want law enforcement officials to overreact to a situation like this, but you do want them to take some sort of appropriate action. Here, this – what Mr. Nixon and Sheriff Rieger do is Sheriff Rieger consults with the county attorney, who advises him, as alleged in the complaint, that this constitutes criminal trespass, and then sends a deputy out to Mr. Burgan's house, who gives him a ticket. He doesn't take him out of his house. He doesn't arrest him. He's not taken to jail. He's given a ticket, a citation and notice to appear on a misdemeanor criminal trespassing charge. And the deputy tells him, stop going on the situation down in August of 2013. Subsequent to that, the criminal trespass charge is dismissed, and Mr. Burgan brings a declaratory judgment and damages action against Mr. Bryant. Now, back at the very beginning of this case, Mr. Burgan had a lawyer, Matthew Brauchman. He had another B for the Court's consideration. And at ER 84, Mr. Brauchman writes a letter to Mr. Bryant. What Mr. Brauchman says to Mr. Bryant is, look, Bill Burgan's got an easement right, a secondary easement across your property. Here's the statute that lays out how these easements work. If you keep interfering with that right, we're going to go to district court. We're going to file a temporary restraining order, an injunction against you. We're going to seek a damage remedy. And when we win, we're going to get an award of our costs and attorney fees. That happens in 2012. That letter is written, I believe, in August of 2012. And it's prescient in this case. That's exactly what happens in Judge Moses' decision in this case. He finds that the secondary easement is valid. He awards costs and attorney fees. He doesn't award all of them due to some balancing that isn't really relevant here. But from the beginning of this case, in Mr. Brauchman's letter at the beginning of this case, there was no interaction between Burgan and Bryant. Now, what this court should look to to determine whether, in fact, the law is clearly established at the time that Mr. Burgan is cited for trespassing is Montana law. Under Montana law, under the Spreadberry v. Bitterroot Public Library, Judge Malloy in that case says, look, where a criminal trespass charge is not clearly precluded by Montana law, the officers are entitled to qualified immunity. Now, Spreadberry, like many of the existing cases, has to do with trespassing at a public place rather than across a private easement. That's a big distinguishing feature of most of the applicable cases. And in Spreadberry, Mr. Spreadberry was upset with the Bitterroot Public Library because they wouldn't include in their collection some of his letters to President Obama. In chastising the library board with further letters, Mr. Spreadberry referred to the Unabomber and he's banned from the library and he goes back and he's charged with criminal trespass. Now, what Judge Malloy held there was where that sort of criminal trespass charge is not clearly precluded by Montana law. And given the fact that the reference to the Unabomber could be considered threatening, the officers are entitled to qualified immunity. Here in this case, there is precedent in a case called Laden v. Atkinson from back in 1941 where the Montana Supreme Court holds that exceeding the scope and terms of one of these secondary ditch easements can constitute a trespass. That is, where these easements are located. So, that's not really what happened here, right? The Bergens weren't exceeding their easement and I guess a related question is, why do you have to wait for a court to determine whether or not an easement exists to know that an easement exists under Montana law given how an easement arises through historical usage? Your Honor, with respect to the existence of an easement, there's an issue as to, one, its existence. And two, it's the time, the place, and the manner of the easement's use. So that the question of the easement's existence may in fact be relatively uncontroversial. And assume for purposes of argument here that the easement, its plain existence, is established. There are still questions about what Montana law calls its scope. That is what is sometimes referred to in the decisions as the what, how, when, and why of the easement's use. For example, in this case, it's an easement to get to a head gate. To get to the water. Yes, the head gate controls the water, yes, Your Honor. Right. So in essence, they had an easement to be able to get to the water. And Brian, who's allegedly Nixon's friend, or no, is it Nixon's friend, or Rieger's friend, anyway, he blocked the Bergens from getting to their water. Yes, Your Honor. And the sheriff or whoever protected him in doing that, having been put on notice that there was an easement for the Bergens to get to use that water, historically. Yes, Your Honor. And what Mr. Brian is complaining about to the sheriff and to the county attorney is that, in effect, Mr. Bergen is abusing the easement by driving in an irresponsible manner. That he's picking a route that's disturbing the grass. And there are allegations in the correspondence between Mr. Brauchman and Mr. Nord, the first two lawyers back in 2012, about it disturbing the cows as well. And that, under Layden v. Atkinson, where while the right to get to the water is not particularly in dispute, the manner in which it's exercised is. And that would be the key issue under Layden, would be, is that right of access being exercised in a reasonable manner? And that's a balancing test for the court to decide. That's why Judge Moses, in issuing his decision, refers extensively to the mussel shell case. And, in fact, Judge Moses' decision does a very cogent job of laying out the balancing tests required by Montana law. And the real point here is that it's the court, more than any other agency, not the county attorney, not the sheriff, who should weigh the competing claims between Bergen and Bryan, determine what a reasonable scope of use of that easement is, and make a ruling that is then established as of record from that point on. You're into your time, but there's one other point I'd like you to speak to, which is that how do we have jurisdiction to consider issues other than qualified immunity? Your brief presents state law challenges and so forth. What basis do we have to consider any of those issues? That would go to the reasonableness of the officer's actions. No, I'm not asking what's the issue. I'm sorry. I mean, our appellate jurisdiction in this context for an interlocutory appeal is limited. Yes, sir. It is limited to issues pertaining to qualified immunity and things that are inextricably connected to that. Telling me about State law issues and malicious prosecution, I'm not sure how many of that's before us now. Your Honor, I believe that it would be before the Court on the issue of whether or not Nixon and Rieger's actions in charging trespass, which is a State law charge, are reasonable under established State law. One of your issues asks about absolute immunity to the qualified or to the malicious prosecution claim. That's strictly a State law claim. Your Honor, let me turn quickly to then to qualified immunity on the State law claims. Sorry, absolute immunity on the State law claims. Stop there. Because how do we have jurisdiction to consider anything other than the 1983 claims? You don't, Your Honor. Okay. That's it. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Matthew Monfortin appearing on behalf of Bill and Lynette Bergen. In August of 2013, the defendants charged my client, Bill Bergen, with trespassing upon an easement running across his neighbor's ranch and threatened him with arrest if he did it any further. They did this knowing that the Bergens and the prior owners of the Bergen ranch had been using that easement for over a century and needed to use that easement to be able to get to their irrigation water. How did they have personal knowledge of that? Or is that simply what they've been told? That was what they were told by. So they didn't have personal knowledge of that. But they knew that from the affidavit that. Well, they knew that's what your client told them. But they didn't adjudicate that claim. They didn't go seek to investigate independently. They didn't try to find out what other people had to say about that, did they? They weren't the judge. Well, what happened was my client, Mr. Bergen, had brought affidavits to the Sheriff's Department, affidavits from the prior owners of both the dominant tenement and the serving tenement saying this easement has been here for a century. So they knew what they had been told. Correct. That's not necessarily the same thing that they knew. But it is something that a reasonable officer would take into account before simply arresting or charging. There was no arrest in this case, was there? There was no arrest. So I think one tough hill for you to climb here is what, in terms of qualified immunity, what was the clear authority telling these officers that issuing a citation in this case could possibly violate someone's Fifth Amendment and Fourth Amendment rights? What's the case that says that? With regard to the Fifth Amendment takings issue and the Fourth Amendment seizure issue, starting with the Fifth Amendment takings issue, this Court's decision in Armendariz states that when there are false civil violations alleged, that that can end up, if it ends up taking property from one private owner to another. But a citation didn't do that. Correct, but it's a criminal citation, so it's even more egregious than So, again, what's the case that says a citation, which is like a ticket, is there any authority that says that, by doing that, could lead to taking in a Fourth Amendment seizure? No, Your Honor. There's not, other than the deportees. Isn't that a problem then for you? I mean, under the qualified immunity of the Supreme Court, our court and many other courts have been hit on the head with that hammer by the Supreme Court, saying you've got to have a specific thing that puts the officers on notice, a law, a decision of some court. It's a problem with regard to our Fourth Amendment seizure claim and perhaps a problem with regard to our Fifth Amendment takings claim. There's plenty of case law that we've cited in our supplemental brief with regard to the due process violation that occurred. There's plenty of case law saying that police intimidation, be it threats of arrest or citations, interferes with the use of property, and by doing so, without notice and without a hearing, leads to a due process violation. Starting with the Fuentes case, where the Supreme Court held that any significant property interest is protected by due process. We then go to the James Bennett. I mean, what your client was told was go to court. You weren't denied access to court, and indeed your client did go to court and ultimately adjudicated the dispute. I'm not sure what tells the sheriff that he's supposed to act as the judge in resolving a dispute between two parties on the spot in a circumstance which, your colleagues argued, there was tension and threats that the tension would mount. So why isn't it the sheriff's principal job to keep the peace and let the parties go to court and determine legally who had what kind of rights? Because the sheriff took sides by excluding my client from an easement that he had used and his predecessors had used for a hundred years. So you want the sheriff to become the judge on the spot. No, precisely the opposite. We don't want him to get involved. But you're telling me he must get involved because he refuses to recognize what your client tells him with regard to his legal access. No, we want him to get involved by looking at the evidence that was presented to him weeks ago. Who looks at evidence? Is that the sheriff or is that a judge? Whose job is that? Well, when there's a reasonable claim of right, that's the sheriff's job. It's the sheriff's job to look at these documents and say, I don't know if Brian is now right when he changes a rule that's been in place for a hundred years. I'm not going to take action to help Mr. Brian eject Mr. Bergen from an easement that he's used for decades. I'm going to stay out of this unless there really is some kind of physical confrontation or disorderly conduct, of which there absolutely was none in this case. Well, we know there had been at least one cut lock. Correct. And it was your client that seemed to indicate that things were going to get worse. What he was saying was he was afraid that Brian was going to attack him. There was absolutely no violence on behalf of my client engaged in. He was worried that violence was going to be coming in from the other side. That's not a justification for the sheriff to say, OK, I'm going to solve this problem by ejecting you, Mr. Bergen, from the easement that you've been using by cutting off your water supply for 18 months to your irrigated property and preventing you from growing hay, which he's needed to do to keep that operation alive. I guess I'm just trying to understand. It seems to me what this case really is. It's neighbors who have a fight over where an easement is or who can go through a gate. Why is it in this case neighbor suing neighbor as opposed to neighbor suing sheriff in federal court? What am I missing here? Well, what happened was there was the civil action against Brian that that resulted in the easement being formally affirmed. But there were no damages awarded in that case. And there are clearly damages in this case. And there is clearly responsibility on behalf of the sheriff and the county attorney for those damages. Because Mr. Bergen would have been able to continue using his easement and using it peacefully as he's done for decades. But for the fact that Sheriff Rieger and Mr. Nixon intervened on behalf of Mr. Brian. Who really cut off access? It seems to me it was Mr. Brian that cut off access. It was Mr. Brian that tried to cut off access. And Mr. Bergen continued. He succeeded in doing so. Because if he had said, you know, you've got access, we wouldn't be here today. Correct. So why isn't this claim, I mean, the question raised by Judge Owens I think is a good one. Why isn't this claim against Mr. Brian? There was a claim brought against Mr. Brian for declaratory relief. But that doesn't preclude Mr. Bergen from bringing a claim of damages. Why wasn't the claim of damages brought against Mr. Brian? He's the person that took the action. But he's not the only person that took the action. Because Mr. Brian's act, standing alone, did not keep Mr. Bergen from using his easement. Sure it would have. He builds a great big fence and locks it and keeps putting new locks on. That's the source of the problem. He's the one that's making the complaints to the sheriff. The source of the problem is the defendants saying, if you come on this easement again, Mr. Bergen, we're going to arrest you. And why do they say that? Who's making the complaint to the sheriff that gets the sheriff to say we've got to stop this? Mr. Brian does. So who's the motivating factor here? I mean, by your tale, it sounds like it's Mr. Brian. Mr. Brian is the initial tortfeasor. He's not the only tortfeasor in this matter. The sheriff and the county attorney are the ones that tip the balance. They're the ones that upset the status quo that had existed for over a century. The status quo that looked like it was cruising for a bruising, that it was going to get worse, that somebody was going to get hurt. But you think that's fine and that the sheriff should stand back? Yes. And it's clearly established that that's fine and the sheriff should stand back? Yes. And the cases you have to offer, the ones you've cited so far, I've got to tell you, if I were the sheriff, I think I would have done the same thing that they did. The problem with that, Your Honor, is that the danger and the risk was coming from Mr. Brian. It was not coming from Mr. Bergen. Have you ever heard the maximum possession is nine-tenths of the law? I have heard that. Okay. Well, so you're the sheriff in this situation. You know, one guy has the land and the other guy claims he has rights to access. And he seems to have some kind of right of access, but there's a dispute over where the rights should run. And it's gone to the county attorney and the county attorney's not getting involved. It's gone to the attorney general and the attorney general says we're not getting involved unless you need to go to court. But you don't want to wait to go to court, so you're demanded, you're required to take action now, and you're hearing threats from one party and the other. What do you do? Do you stand back and let the parties bash each other upside the head, or do you take action and say, you guys go settle this, in the meantime, we're keeping the peace? If action needs to be taken, then the correct criminal charge would be something like criminal intimidation, something based on threats, disorderly conduct. None of that happened. You can't charge Mr. Bergen with trespassing when he has all of this evidence that he's presented weeks ahead of time showing that he had that easement, showing that he's been using that easement for decades and that the prior owners have been using it for decades before that. This case changed because state actors got involved in a dispute that they had no business getting involved in. That's what changed this case. That's what created the liability. But they had no business getting involved in it. Why did your client tell them anything? Because he's worried that Mr. Bryan is going to do something. I guess that gets back to Judge Clifton's point. I mean, the police should stay out of this. The sheriff should have stayed out of this. Your client's the one who came up to him and said there could be problems or whatever he said, right? What my client did was simply present documents weeks ahead of time saying, here's my rights. Please, please stay out of this. So your client approaches the sheriff, gets the sheriff involved, and then you're saying the sheriff should have done nothing. Well, no, the sheriff was involved well before my client approached him with the documents. My client approached him with those property documents and affidavits to say, look, Mr. Bryan's complaints are false. Here's my easement. I've been using it for decades. Please don't take his side. But then he says, the problem, I think, for your client in this case is once he says there could be problems or whatever he says, from the officer's perspective, what if he had done nothing? Cowboy justice happens out there. When was the officer supposed to do? The officer shouldn't have done anything until he had probable cause that there was some kind of imminent violence. Well, he should have ignored what your client told him. He should have ignored with regard to what my client was going to do because my client wasn't saying, I'm about to do something violent if things don't work out the way I want. He was warning the sheriff that Mr. Bryan was going to be engaged in some kind of altercation. Is that what he actually said? He said Mr. Bryan would come over here and do me harm? He didn't use Mr. Bryan's name specifically, but that was the intent of that letter. They were worried that some kind of violent altercation was going to take place. And that's what the concern of that letter was. That letter wasn't, hey, if things don't get fixed soon, we're going to take action. It was exactly the opposite of that. This case changed the minute that state actors got involved, took sides, and they decided to eject my client from his easement. That's what happened here. This wasn't the sheriff's department keeping the peace. This was the sheriff's department saying, Mr. Bergen, you're off this land that you've been using for decades. And if you use it again, we're going to arrest you. And the clear authority saying that is what? I'm sorry, the case law? Yeah, like the case that an officer would put the officer on notice as of August of 2013 that by issuing the citation, he would be violating the constitutional rights of your client. Starting with United States v. Miller, the Tenth Circuit case that we cited. Well, Miller is not a 1983 case. Miller is a dismissal of a criminal prosecution. So how does the sheriff know if he doesn't act as a judge and make a decision, he can maybe be personally liable? Because Miller makes clear that doing, even though it's a criminal case, Miller makes clear that using a criminal forum to decide these kind of property issues rather than a civil forum is, and I quote from Miller, procedural, it's a procedural due process violation. Those are the exact words that the Tenth Circuit used. Do you think that the sheriff thought he was deciding that? Or weren't they saying, as the county attorney and attorney general had said, you know, it's important to work that out. I'm just trying to make sure there's not violence between these two contesting parties. They decided it when they told my client, you go back on that easement again, we'll arrest you. That was an ejectment of my client from his easement. That's when they decided it. That's when they became the judge. That's when they decided. And Miller didn't say all this, so what did? Well, there's other cases. For instance, the Schmidt case that came out of the Eastern District of Pennsylvania involving virtually the same situation, where easement holders were cited for trespass by police officers who knew that they had an easement claim. Now, Schmidt is a 2014 case. Okay, so that doesn't count. But it does involve actions that took place in 2011. The case has to be decided at the time of the incident. So 2014 doesn't count. I understand, but Schmidt was based on Fuentes and a Third Circuit case called Abbott that makes very clear. And those are the cases that you launched? Yes, yes. Fair point. So Fuentes, Abbott v. Latshaw, Third Circuit case that says threats of arrest can lead to deprivation of property interest under due process. There's a Tenth Circuit case, the McCollum case, which follows the reasoning of Abbott v. Latshaw. These are not Ninth Circuit cases, but obviously this court can look to cases outside of this circuit to determine what law is clearly established. There's this court's statement in Harris v. City of Roseburg saying deprivations can arise from police intimidation. There's another statement from this court more recently in the Peng case, cited in our briefs, where it says the court has been very suspicious of efforts to involve the police in enforcing civil obligations. That's exactly this case. That's exactly what happened here. All right, thank you very much. Unless there are any other questions, Judge Wardlaw? Thank you very much, counsel. Thank you, Your Honor. Rebuttal? We'll give them two minutes. Thank you, Your Honor. Your Honor, in closing, I would just like to address one point that I see the panel had some concern about with respect to the civil damage remedy that was pursued by Mr. Bergen. At ER 133, we have Judge Moses's follow-up decision awarding attorney fees as a result of his summary judgment motion. And on ER 133, he says, After much disagreement, and this court's order granting the Bergens motion for summary judgment, which recognized their secondary easement and right to use the roadway on B&H's property, that's Brian B&H, the parties came to an agreement on all issues but attorney fees. That means they settled all those other claims other than the attorney fee claims which were made before Judge Moses, which he then decides in that order the court will find at ER 133. So I just want to show the court that in the record, that issue does, in fact, get resolved. And we would ask that the court find that Nixon and Rieger acted in a reasonable way and should be entitled to the defense of qualified immunity in this case. Thank you. Thank you very much. Thank you both, counsel, for your argument in this case. This matter is submitted and we are adjourned.
judges: Wardlaw, Clifton, Owens